VARMA & CLANCY
Attorneys at Law
Geralyn M. Clancy (SBN 173401)
Bob N. Varma (SBN 173508)
4354 Town Center Boulevard, Ste. 114 PMB 17
El Dorado Hills, California 95762
tel. (916) 941-4912
fax (916) 941-4972
email: bvarma@varmaclancy.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.T., A minor, By and Through L.T., His Guardian ad Litem,<br><br>  Plaintiff,<br><br>v.<br><br>LOS ALTOS SCHOOL DISTRICT, CALIFORNIA OFFICE OF ADMINISTRATIVE HEARINGS, and CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>  Defendants.<br>_____/ | CASE NO.: C06-05748 MJJ<br><br>DECLARATION OF BOB N. VARMA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)<br><br>Date: November 21, 2006<br>Time: 9:30 a.m.<br>Crtrm: 11<br><br>Hon. Martin J. Jenkins |

I Bob N. Varma declare as follows.

1.  I am an attorney licensed to practice law before this court. Each and every fact set forth in this declaration is of my personal knowledge and if called to testify I would so testify.

2.  I am one of the attorneys representing Plaintiff, C.T., in the administrative hearing.

3.  The hearing commenced on October 17, 2006 and continued through October 20, 2006.

4.  Two more days of hearing have been scheduled for November 2, 2006 and November 3, 2006.

5.  During the hearing, the parties have questioned witnesses and submitted written documents as evidence. Pursuant to the Hearing Officer's direction, the questioning and

C.T. v. LOS ALTOS SCHOOL DIST. et al.; Case No. C06-05748 MJJ
Declaration of Bob N. Varma in Support of
Plaintiff's Opposition to Defendant Los Altos
School District's Motion to Dismiss Pursuant to FRCP 12(b)(1)            Page 1 of 2

evidence has been restricted to the extent possible to the time period after August 8, 2003.

6. At the start of the hearing on October 17, 2006, the Hearing Officer reviewed the pre-hearing conference order and identified that the hearing would only focus upon claims of appropriate educational services from August 8, 2003 through the extended school year period of 2004. This was consistent with his dismissal of educational claims concerning time periods prior to August 8, 2003.

7. To the extent that testimony has been provided or evidence submitted that concerns time periods prior to August 8, 2003, it has been done only for historical purposes.

8. The Hearing Officer presiding over the administrative proceedings has made is clear that his written decision, when rendered, will only render findings and orders concerning the time period after August 8, 2003 through the extended school year of 2004.

9. Attached hereto and made part hereof as Exhibit 1, is a true and correct copy of the decision in *Omid. A. v. Dublin Unified Sch. Dist.*, (ND CA 2003) 104 LRP 43027.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and is based upon my personal knowledge. Executed this day, the 31st of October, 2006 in Elk Grove, California.

                        /s/
                        Bob N. Varma

C.T. v. LOS ALTOS SCHOOL DIST. et al.; Case No. C06-05748 MJJ
Declaration of Bob N. Varma in Support of
Plaintiff's Opposition to Defendant Los Altos
School District's Motion to Dismiss Pursuant to FRCP 12(b)(1)                    Page 2 of 2

**Exhibit 1 to Decl. of Bob N. Varma**

104 LRP 43027

## OMID A., a minor, by and through FATEMEH B., his guardian ad litem, Plaintiff, v. DUBLIN UNIFIED SCHOOL DISTRICT Defendant

### U.S. District Court, Northern District of California

C 02-03430 WHA

**January 21, 2003**

### Judge / Administrative Officer

WILLIAM ALSUP

### Full Text

### Appearances:

## Order Granting Plaintiff's and Denying Defendant's Motions for Summary Judgment

### Introduction

Through this lawsuit, plaintiff seeks judicial review of an administrative decision made by a special education hearing officer pursuant to a due process hearing. The hearing officer ruled that there was no "prevailing party" on any of the issues underlying plaintiff's administrative complaint. Plaintiff also seeks attorney's fees and costs. After reviewing the administrative record and oral argument, this order finds that the hearing officer's conclusion must be REVERSED. Accordingly, plaintiff is a prevailing party entitled to attorney's fees.

### Statement

This case concerns plaintiff's entitlement to attorney's fees. Plaintiff's parents complained to California's special education hearing office regarding Dublin Unified School District's proposal for providing special education services and programs to plaintiff. After a due process hearing, the hearing officer's written decision found that there was no prevailing party thus rendering plaintiff ineligible for attorney's fees and costs.

The Individuals with Disabilities Education Act ensures "that all children with disabilities have available to them a free appropriate public education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. 1400(d). Educational programs for disabled children are designed and implemented through Individualized Education Programs ("IEP"). An IEP contains, among other things, a statement of the child's present levels of educational performance, annual goals and short term objectives, the specific educational services to be provided to the child and the extent to which the child will be educated in regular education programs. 20 U.S.C. 1414(d).

A parent may file a complaint with respect to any matter relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education ("FAPE") to the child. 20 U.S.C. 1415(b)(6). The parent is then entitled to an impartial due process hearing conducted by a state education hearing officer. 20 U.S.C. 1415(f)(1). California's hearings are operated through the Special Education Hearing Office, Institute for Administrative Justice, McGeorge School of Law, in Sacramento, California. An aggrieved party may then appeal the hearing decision to federal court within 90 calendar days of the hearing decision. 34 C.F.R. 300.512. California has also passed its own statutory scheme pertaining to the provision of special education, which generally parallels IDEA and provides a foundation for the provision of special services in California. Cal. Educ. Code 56000 et seq.

In June 2000, plaintiff began attending a private conductive educational program at Beginning Steps to Independence that was funded by the Regional Center of the East Bay pursuant to IDEA. On November 6, 2001, plaintiff turned three years of age. At that time, responsibility for his special education program and services was transferred to defendant Dublin Unified School District (Hearing Officer Decision at 2).

On January 18, 2002, the district convened an IEP meeting concerning plaintiff's placement. The district offered plaintiff a special education placement

in a public school class with occupational therapy, physical therapy, and speech and language therapy services, and a referral to California Children's services for a determination of eligibility for medically necessary occupational therapy and physical therapy. On January 30, 2002, plaintiff's mother observed the district's proposed public special-day class and on February 6, wrote to the district rejecting the placement offered for her son (Administrative Record ("AR") at 575, 514, 516). On February 11, 2002, plaintiff's parents filed a request for a due process hearing with the California Special Education Hearing Office. They challenged the appropriateness of the offer of placement and services that the district offered (AR at 131, 575, 741-42).

On March 11, 2002, plaintiff's parents and the district participated in a mediation conference without the assistance of counsel. The parties were unable to reach agreement on the appropriate placement for plaintiff. On April 2, 2002, the district filed its statement of issues for the due process hearing, in which it claimed it had offered plaintiff FAPE on January 18, 2002 (04-02-02 Letter from B. Flanagan).

On May 13, the district sent a letter to plaintiff's parents enclosing an assessment plan for evaluation of plaintiff. On May 17, plaintiff filed a motion for "stay-put," seeking an order that the district maintain plaintiff's educational placement at Beginning Steps to Independence (Motion for Stay Put). The district filed a written opposition to the motion (Opp. to Motion for Stay Put). On May 29, the hearing officer granted the motion in part. The decision denied plaintiff's request for an order that the district fund the Beginning Steps to Independence program during the pendency of the due process proceedings. The decision then ordered the district to maintain plaintiff in a conductive education program pending resolution of the dispute (5-29-02 Order).

On June 8, plaintiff's counsel Roberta Savage sent a letter to the district's counsel, Bridget Flanagan. The letter stated that if an IEP meeting was not held by June 12, plaintiff would take further legal action unless counsel received a written response from the district's counsel "no later than noon on June 10, 2002, indicating that [the district] will unconditionally fund [plaintiff's] placement at Beginning Steps from February 12, 2002, through the final resolution in this matter." (B. Flanagan Decl. Ex. 1). On June 10, 2002, Ms. Flanagan sent a response that stated in pertinent part:

a review of the [stay put] Order indicates that Ms. Kim did not require the Dublin Unified School District to convene an IEP meeting but rather to offer [plaintiff] placement in a program that is analogous to the Beginning Steps program and in accord with his IFSP [individualized family services plan] dated July 24, 2001. Therefore, for purposes of "stay put" the District is willing to maintain Omid's placement at Beginning Steps to Independence consistent with his IFSP dated July 24, 2001.

*(id.* Ex. 2).

On May 30, 2002, the parties met with counsel in another mediation conference. They were unable to resolve the dispute concerning plaintiff's educational program and services (E. Matteucci Decl. ¶¶ 2-3). On May 31, 2002, plaintiff submitted his 10-day statement of issues identifying the following issue for resolution at the due process hearing:

Issue 1: Did the district offer plaintiff a FAPE between his third birthday November 6, 2001 and the IEP dated January 18 and 30, 2002?

Issue 2: Did the district offer plaintiff a FAPE for the 2001-02 school year, include the 2002 extended school year, when it proposed a change in placement in the January 18 and 30 IEP document?

Issue 3: Did the district offer plaintiff a FAPE for the 2002-03 school year, through January 2003, when it proposed a change to his current educational placement in the January 18 and 30, 2002. IEP document?

Issue 4: What is the appropriate educational placement and services for plaintiff?

Issue 5: Are plaintiff's parents entitled to reimbursement for all costs that they have incurred in providing his educational program since his third

birthday?

Issue 6: Is plaintiff the prevailing party in this proceeding?

(AR at 370-740).

The same day, the district sent its statement of issues in the underlying administrative hearing. This was sent along with the district's written ten day program and reimbursement offer. The district offered to reimburse plaintiff's parents for his tuition and services at Beginning Steps from February 15, 2002, through September 30, 2002, a proposed prospective placement and program in an IEP for the 2002-03 school year, an IEP meeting to finalize a plan for plaintiff's transition to the district's program and an assessment of plaintiff (AR at 185-95, 290-300). The district did not offer to reimburse plaintiff's parents for attorney's fees and costs. The district simultaneously filed for a due process hearing against Omid seeking to assess him. (E. Matteucci Decl. ¶ 40).

On June 1, 2002, the district's counsel wrote to plaintiff's counsel to clarify its settlement offer of May 31, 2002. The district indicated that if the Regional Center of the East Bay had not reimbursed the parents for their out-of-pocket costs (including tuition and transportation) from the time of plaintiff's third birthday, the district would do so (AR at 301). The district did not offer to reimburse plaintiff's parents for attorney's fees and costs.

On June 7, 2002, the district filed a motion to dismiss on the grounds that the issues raised were either moot or not ripe for hearing (AR. at 287-89). On June 10, the hearing officer issued a written order denying defendant's motion to dismiss (Summary Order Denying Motion to Dismiss). That same day, the district agreed to maintain plaintiff's placement at Beginning Steps pending resolution of the dispute (E. Marteucci Decl. ¶ 5).

The hearing officer held the underlying due process hearing on June 11 and 12, 2002 (AR at 1, 94). During the review of plaintiff's statement of issues, the district admitted to and stipulated on the record certain factual issues: 1) that the district failed to offer plaintiff a FAPE through his third birthday, November 6, 2002, through the IEP dated January 30, 2002; and 2) that the district failed to offer plaintiff a FAPE for the 2001-02 school year, 2002 extended school year and the 2002-03 school year *(id.* at 7, 16, 73-76, 114). The district then offered to reimburse plaintiff's parents for their out-of-pocket educational expenses through September 30, 2002 (AR at 81). The district then offered to convene an IEP meeting prior to September 30, 2002 to discuss an appropriate placement for the 2002-03 school year *(id.* at 115). When the parties were discussing a prospective offer of FAPE, the hearing officer indicated that she had no authority to order a prospective placement at Beginning Steps because it is a non-certified private school (AR at 85, 90-91). Accordingly, plaintiff withdrew issue 4, regarding what an appropriate program and services were *(id* at 97).

On several occasions during the hearing the parties temporarily suspended formal proceedings to discuss settlement off the record *(id* at 20-21, 28-3, 38-41, 51-52). The parties were not able to reach agreement. At no time did plaintiff accept the district's conditional offer of reimbursement (E. Matteucci Decl. ¶ 3). At one point the hearing officer stated: "The Petitioner is essentially prevailing, the Petitioner says you didn't provide this, the District says, you're right, we didn't. And that's -- that's the answer" (AR at 61).

On the second day of the hearing the hearing officer indicated that there would be no testimony presented at the hearing based on the circumstances of the proceeding *(id* at 101). Plaintiff's counsel indicated they were not agreeing to a "stipulated judgment" but instead requested the hearing officer to issue findings and an order based on the district's stipulations or "admissions" *(id* at 116-17). In light of the parties' disagreement as to how to characterize the effect of the district's admissions, the hearing officer directed the parties to hold settlement discussions in private *(id* at 105). Upon further discussion between the parties, the hearing officer stated, "I believe I

Copyright © 2006 LRP Publications                                                                                                                                3

agree that I haven't heard any evidence, but what I have heard is the agreement, and the decision would be how to frame the actual orders and whether or not there is a prevailing party." *(id* at 113).

The district again sought dismissal of the hearing based on the fact that no factual issues remained in dispute after the parties' discussions with the hearing officer and off-record settlement negotiations during the hearing *(id* at 102). The district maintained at the hearing that no factual issue remained after stipulations to plaintiff's issues 1, 2, 3, and 5 were made and issue 4 was withdrawn *(id* at 102-04). Plaintiff's counsel stated "... originally we asked for more than that, we asked you -- you to stipulate specifically ... and the hearing officer accept [sic] that and told us that we can't -- we can't proceed on those issues, which you agreed to yesterday so we are living with that. ... We accept that, we accept those stipulations." *(id* at 113-14).

Upon the district's counsel's argument that because no issues were in dispute, the district was entitled to a dismissal, the hearing officer directed the parties to continue settlement decisions before a determination should be made as to "whether or not -- we -- we've got an issue of whether or not this should be a stipulated decision or a dismissal" *(id* at 105). The hearing officer then stated:

... we all believe that there aren't issues ... the parties can settle this and then either do a dismissal or the parties can settle this with stipulated language or a decision that I would make ... You all agree that FAPE was not provided and not offered. You all agree that reimbursement is what is necessary. So we ... you all agree that you need to have an IEP reconvened, and that IEP order can be reconvened by -- within 30 days, and the district has already agreed to pay for payment through September 30th ... and pay for tuition through that date. So if the IEP is convened prior to that date -- um -- then that will help resolve that issue ...

*(id.* at 105-06). The district's counsel then stated in response:

I'm just going to go back to ... [California Education Code Section] 56507(d), which states that the ... decision shall indicate that extent to which each party has prevailed on each issue heard and decided ... But there hasn't been any testimony in this case. The parties have stipulated to -- um, not facts, but -- um -- to resolve ... issues, and the Hearing Officer hasn't heard any evidence, and will not hear any evidence, and so, therefore, I think it's -- it's really clear that ... any orders ... that can be made by the Hearing Officer are also very limited.

*(id.* at 109-10). Plaintiff's counsel opposed the hearing officer's suggestion to issue a "stipulated decision:"

We're asking for a decision by the Hearing Officer. We're submitting the matter to you ... The only thing -- the only thing that has happened is that the district has -- has stipulated to certain facts ... we want a decision now based on what's before you, and what's before you in those stipulations.

*(id.* at 112).

The hearing officer provided the parties with additional opportunities to come to an agreement on the language of what the hearing officer proposed as a "stipulated decision" based upon the district's stipulations as follows:

[T]he District agrees or admits that they did not provide a FAPE -- um -- for Issue No. 1 between such-and-such time frame. If the ... parties can agree that the District did not offer FAPE on the January 30th, 2002 ... IEP meeting, and that the District agreed ... to reimburse through September 30th, which is the school year. So that would be my suggestion, and if you can craft language, if that's what the parties desire to do ... it's a stipulated agreement ...

*(id.* at 124-125).

Following a final attempt to come to an agreement on the stipulations, plaintiff's counsel stated to the hearing officer, "We're gonna submit -- we asked -- we went through our list of what -- what we would like in terms of findings and order. If -- if

you need clarification we're happy to do that, otherwise we're willing to submit it" *(id.* at 126). The hearing officer responded: "Okay, and if the parties are willing to submit it, then I'm willing to do a decision based on what I've heard here today." *(ibid.)*

On July 11, 2002, the hearing officer issued a written decision in the underlying administrative hearing. The decision noted: "[Plaintiff's] parents have consistently rejected the District's offer of placement and maintained [plaintiff] at Beginning Steps to Independence. Prior to the hearing the District had contended that its program was appropriate; however, the District agreed at hearing that it did not offer a FAPE to [plaintiff]" (Decision at 2). The hearing officer found that the district stipulated that 1) "a FAPE was not offered between November 6, 2001, and January 30, 2002;" 2) "a FAPE was not offered for the 2001-02 school year and extended school year;" 3) "The District agreed to reimburse the parents to the cost of [plaintiff's] program at Beginning Steps to Independence, a noncertified [sic] nonpublic agency, from November 6, 2001, through September 30, 2002, including extended school year;" and 4) "the District agreed to convene an IEP meeting prior to September 30, 2002, to determine an appropriate program for [plaintiff] for the 2002-03 school year." (Decision at 3-4).

The decision ordered the district to pay for plaintiff's placement, including transportation costs, at Beginning Steps to Independence for the period November 6, 2001, through September 30, 2002, and to convene an IEP meeting to determine an appropriate placement for plaintiff prospectively. *(id.* at 4). The hearing officer then determined that: "Although the District admitted to failing to offer a FAPE and agreed to [plaintiff's] remedies, there is no prevailing party for any issue because no issue was actually heard before the Hearing Officer because no issues were in dispute." (AR at 133).

On July 17, 2002 plaintiff filed a complaint in this Court appealing the hearing officer's decision and alleging he was entitled to "prevailing party" status and thus reasonable attorney's fees. On October 10, 2002, the parties filed a joint case management conference statement indicating that they would be filing cross-motions for summary judgment and would not pursue discovery. On December 12, 2002, the parties filed these cross motions for summary judgment.[1] Oral argument was heard on January 16, 2003.

### Analysis

As noted above, IDEA provides a cause of action for parents to contest the provision of a FAPE to their child. 20 U.S.C. 1415(b)(6). The parent is granted an impartial due process hearing regarding their complaint that is conducted by a state education hearing officer, 20 U.S.C. 1415(f)(1), and may appeal the hearing decision to federal court. 34 C.F.R. 300.512. Section 1415(e)(4)(B) of the IDEA provides that: "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. 1415(e)(4)(B). Plaintiff contests the hearing officer's finding that he was not a prevailing party in order that he may be awarded attorney's fees.

### Standard of Review and Deference Owed to the Hearing Officer's Determination

Judicial review of a hearing officer's decision made pursuant to the IDEA is in substance more like an appeal from an administrative determination than a summary judgment review. This is because, unlike on a typical summary judgment motion, material issues of disputed fact may be resolved on judicial review. *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 891-92 (9th Cir. 1995). The district court conducts a qualified de novo review of the evidence, and "must give due weight to judgments of education policy." *Ojai Unified School Dist. v. Jackson,* 4 F.3d 1467, 1471-72 (9th Cir. 1993). The Ninth Circuit has adopted the First Circuit's standard:

The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply. This

does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.

*Ash v. Lake Oswego School Dist.,* 908 F.2d 585, 587-88 (9th Cir. 1992). The Ninth Circuit "gives the state hearing officer's decision 'substantial weight' when it 'evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *County of San Diego v. Cal. Special Educ. Hearing Office,* 93 F.3d 1458, 1466 (9th Cir. 1996) *(quoting Ojai,* 4 F.3d at 1476). "Ultimately, however, the weight to be accorded administrative findings under the IDEA is a matter within the discretion of the federal courts." *Ash,* 908 F.2d at 588.

Plaintiff bears the burden of proving that the hearing officer's decision was incorrect. Unless the record imparts "a definite and firm conviction that a mistake has been committed," there is no basis for reversal. *Id.* at 589.

## Was Plaintiff a Prevailing Party Under State Law?

While both parties' papers comprehensively dispute whether federal law allowed plaintiff prevailing-party status, both parties at other times argue that the correct law to be applied is California law. At the hearing, neither party could articulate why prevailing party status should not be determined awarded according to state law. Both federal and state statutes were at issue in the administrative proceeding. Accordingly, this order analyzes plaintiff's status as a prevailing party and entitlement to attorney's fees under both federal and state law.

Under California law, "[a]n award of reasonable attorneys' fees to the prevailing parent, guardian, or pupil, as the case may be, may only be made either with the agreement of the parties following the conclusion of the administrative hearing process or by a court of competent jurisdiction ..." Cal. Educ. Code 56507(b). A hearing officer's decision "shall indicate the extent to which each party has prevailed on each issue heard and decided ..." Cal. Educ. Code 56507(d).

In her decision, the hearing officer determined that: "Although the District admitted to failing to offer a FAPE and agreed to [plaintiff's] remedies, there is no prevailing party for any issue because no issue was actually heard before the Hearing Officer because no issues were in dispute" (AR at 133). The hearing officer plainly made findings in accordance with Section 56507(d) in holding that no issues had been heard and decided. The parties' briefs debate the accuracy of this finding and the deference owed to the hearing officer.[2]

The district first argues that no issues were heard on the record because the district stipulated so no evidence had to be heard. This is incorrect. The hearing officer "heard" the district's admissions. Additionally, when the parties could not agree to a settlement, the hearing officer heard both sides on the proposed language for the stipulations. The district also argues that the only issue decided was number 3, on which the hearing officer rejected plaintiff's proposal and adopted the district's. This order holds, however, that all of the issues were decided. The parties could not agree on the language for the decision. For this reason, the hearing officer decided the outcome of the hearing in her decision. The hearing officer herself stated, "I believe I agree that I haven't heard any evidence, but what I have heard is the agreement, and the decision would be how to frame the actual orders and whether or not there is a prevailing party" *(id.* at 113).

Whether the hearing officer "heard and decided" plaintiff's issues, however, is not the operative analysis under California law. California law confers prevailing-party status upon a plaintiff when his lawsuit causes the defendant to voluntarily provide the relief sought. *Westside Cmty. for Indep. Living, Inc. v. Obledo,* 33 Cal. 3d 348, 353 (1983).[3] Accordingly, California law provides for

prevailing-party status and attorney's fees to plaintiff's who prevail if the results are achieved by a judgment, settlement, or even the defendant's voluntary corrective action, as long as the corrective action was attributable to the lawsuit. *E.g., Santisas v. Goodin,* 17 Cal. 4th 599, 621 (1988); *Maria P. v. Riles,* 43 Cal. 3d 1281, 1290-93 (1987).

In this case, there is no doubt that plaintiff's litigation caused him to achieve his objectives. It does not matter that the hearing officer's decision is characterized as a judgement or a stipulated decision. The decision provided plaintiff a legally-enforceable document in which the district agreed to reimburse the parents for the cost of plaintiff's program at Beginning Steps from November 6, 2001, through September 30, 2002, and agreed to convene an IEP meeting prior to September 30, 2002, to determine an appropriate program for plaintiff for the 2002-03 school year (Decision at 3-4). Plaintiff was not required to attend the public school and was not required to go through district assessment. This relief, provided by the hearing officer in the form of a binding decision, demonstrates that plaintiff was a prevailing party entitled to attorney's fees under California law.

## Was Plaintiff a Prevailing Party Under Federal Law?

Plaintiff is also entitled to attorney's fees under federal law. As noted above, the IDEA provides that "the court, in it's discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C.A. 1415(e)(4)(B).

The district first challenges plaintiff's right to prevailing party status under the so-called catalyst theory. The district relies on *Buckhannon Bd. & Care Home v. W. Va. Dep't. of Health and Human Res.,* 532 U.S. 598 (2001), in which the Supreme Court analyzed the factors to be considered in determining prevailing-party status for purpose of federal fee-shifting statutes. The Court held that the party is "prevailing" if it achieved a material change in the legal relationship of the parties that bears the "necessary judicial imprimatur." *Id.* at 604-05. Under this theory, therefore, the mere achievement voluntary relief provided to a party would not render it a "prevailing party". Here, however, plaintiff does not contend that he is owed prevailing-party status for his role as "catalyst" to a settlement agreement or stipulated decision.[4]

Next, the district advances dicta in *Buckhannon* indicating that only the achievement of judicial relief that altered the legal relationship between the parties, a consent decree, or a settlement requiring judicial approval or oversight would provide plaintiff prevailing-party status. Here, there was an order that conferred rights. This dicta, moreover, was assessed by the Ninth Circuit in *Barrios v. Cal. Interscholastic Fed'n.,* 277 F.3d 1128 (9th Cir. 2002).[5] In that case, the Ninth Circuit held that Barrios was a "prevailing party" because he entered into a legally-enforceable settlement agreement with the CIF. *Id.* at 1134. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Ibid. (quoting Fischer v. SJB-P.D. Inc.,* 214 F.3d. 1115, 1118 (9th Cir. 2000)) (internal citations omitted). Thus under Ninth Circuit precedent, "a material alteration of the legal relationship" occurs when the plaintiff "can force the defendant to do something he otherwise would not have to do." *Ibid.*[6] Because *Barrios* could enforce his private settlement in court, he was entitled to attorney's fees under the ADA.*Ibid.* Accordingly, judicial relief altering the parties' legal relationship, a consent decree, or a settlement requiring judicial approval is not required for prevailing-party status.[7]

The district argues that plaintiff is not a prevailing party because the hearing officer's written decision did not change the legal relationship between the parties. This is patently incorrect. The hearing officer spoke about creating a stipulated decision if the parties could craft language upon which they agreed. *(id.* at 124-25). ("So that would be my

suggestion, and if you can craft language, if that's what the parties desire to do ... it's a stipulated agreement ..."). But the parties could not settle and could not agree on language to use. Thus the hearing officer wrote a "decision" that changed the parties' legal relationship.

The district argues that the hearing officer's decision was not resolving a "dispute" because it "contained nothing more than a restatement of the District's stipulations to certain facts and offers of reimbursement, consistent with its settlement offer of May 31, 2002, making a judgment on the merits unnecessary." (Def MSJ at 18). There was a "dispute" that required resolution, however, since the parties were unable to agree on language and the hearing officer had to resolve plaintiff's issues 3 and 6. Such a "dispute," upon which plaintiff prevailed, is sufficient to confer prevailing-party status. *Kletzelman v. Capristano Unified Sch. Dist.,* F.3d 68, 70 (9th Cir. 1995).

Significantly, both parties agree that they submitted to the hearing officer issue 3, the duration of the period of reimbursement (AR at 21, 97, 107, 116-17, 121-22). This alone is dispositive. While the hearing officer adopted the district's suggestion for issue 3 she was awarding relief sought by plaintiff in doing so. As the district's motion notes:

The Hearing Officer's decision, incorporating the District's stipulations that the District admitted it denied FAPE during certain periods and that it agreed to reimburse the parents for their son's educational expenses only through September 30, 2002 ... The parents requested a particular remedy for the denial of FAPE: that the Distnct agree to reimburse the parents through either January 30, 2003, or that the Hearing Officer order [plaintiff's] continued placement at Beginning Steps until the District made an offer of FAPE for the 2002-03 school year. (AR at 122-24). The Hearing Officer indicated that she had no authority to order such continued, prospective placement at a non-certified private school. (AR at 123). The Hearing Officer merely "ordered" the District to reimburse the parents for [plaintiff's] continued placement at Beginning Steps through September 20, 2002," [sic] which was precisely what the District offered to do at the hearing on its own accord. (AR at 115).

(Def. MSJ at 20). Thus, the district acknowledges that the hearing officer herself determined the time period for which the district would have to reimburse plaintiff. That the district had offered to reimburse such is irrelevant.

The hearing officer's decision rendered "a material alteration in the legal relationship of the parties." *Barrios,* 277 F.3d at 1134; *Buckhannon,* 532 U.S. at 604-05. The district vociferously disputes this, claiming that "the decision did not 'force' the District to do anything they did not already stipulate or agree to do on the record." (Def. MSJ at 19). The district understands the standard under *Barrios.* While the district may have offered prior to the hearing or on the record to do certain things, the parties did not sign a settlement agreement or reach a full agreement on the record. The district acknowledges that the hearing officer determined the time period for which the district would have to reimburse plaintiff. That the district offered to reimburse such prior to the hearing and at the hearing is irrelevant. Under defendant's theory, any defendant who offers limited relief in response to plaintiff's broader claim and is ordered to provide such relief would not have altered its legal position. Whether defendant's legal position was altered, however, does not depend upon whether its suggested relief is granted. It depends instead upon whether the decision requires it to do something it would not otherwise legally be required to do. Moreover, while the district may have offered to fund plaintiff's placement pursuant to its obligations under the stay-put order, it was not legally bound to fund that placement.[8] Likewise for its admissions. Until the decision, the district was free to rescind its admissions and offers. But after the decision, plaintiff could get a court order, if needed, to enforce the decision against the district.

Accordingly, after the hearing officer rendered her decision, the district's legal obligation to plaintiff

was solidified. This order concludes that plaintiff was a prevailing party under federal law and is entitled to attorney's fees.

## Should any Attorney's Fees be Reduced Because the Relief Obtained was not More Favorable than the District's Settlement Offer?

The district further argues that even if plaintiff is deemed a prevailing party entitled to attorney's fees, any award should be reduced pursuant to 20 U.S.C. 1415(i)(3)(D)(i). This order disagrees, 20 U.S.C. 1415(i)(3)(D)(i), entitled prohibition of attorneys' fees and related costs for certain services, states:

(i) Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if --

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days, and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

At the hearing, plaintiffs did not accept a district stipulation on issue number 3, the duration of the period of reimbursement for the parents' payment to Beginning Steps. Both parties submitted proposals to the hearing officer. She determined that the district should pay through September 30, 2002. The district argues that this relief was consistent with a settlement offer the district made more than 10 days prior to the start of the due process hearing that the plaintiff did not accept.

According to the district, its counsel faxed to plaintiff's counsel an offer of settlement which accompanied its statement of issues on May 31, 2002 (AR 290-300). This offer of settlement was embedded in the district's "ten day program and reimbursement offer" letter, dated May 31, 2002 (AR at 290). The reimbursement offer stated as follows:

The District offers to reimburse [plaintiff's] parents for their out-of-pocket costs (tuition and transportation) for [plaintiff's] attendance to Beginning Steps to Independence ("Beginning Steps") from February 15, 2002 (the date Regional Center stopped funding the placement) through June 10, 2002, according to proof. The District will contract with Beginning Steps for [plaintiff's] tuition from June 11, 2002 pursuant to SEHO's "stay put" order dated May 29, 2002. The District also agrees to reimburse [plaintiff's] parents for transporting [plaintiff] to Beginning Steps from June 1, 2002 through September 30, 2002, according to proof.

(AR at 290, 307).

This order holds that this reimbursement offer was not a stand-alone settlement offer as the district subscribes. The district's reimbursement settlement offer was proposed in a document that also included the district's "program offer" for a prospective program for plaintiff for the 2002-03 school year. Thus in one document the district offered both to reimburse plaintiff's parents for his tuition and services at Beginning Steps through September 30, 2002, and a proposed prospective placement and program in an IEP for the 2002-03 schools year, and IEP meeting to finalize a plan for plaintiff's transition to the district's program and an assessment of plaintiff. (AR at 185-95, 290-300).

Thus the document proposed not only a reimbursement program, but also other conditions, such as an assessment of plaintiff and requiring plaintiff to be schooled in a public school. These conditions, which were not favorable to plaintiff, were not imposed by the hearing officer's decision. The settlement letter's proposed prospective placement for the 2002-03 school year was at a public school within the Dublin Unified School District. By virtue of the hearing officer's decision, plaintiff was not required to attend the public school in 2002 and instead was able to continue attending Beginning Steps.[9]

The district now maintains that plaintiff was free to accept the reimbursement offer, the prospective program offer, or both. This is unreasonable. The district asserts that the "ten day program and reimbursement offer" letter was clearly divided into two parts for the purpose of facilitating a settlement on either part, reimbursement or prospective program. If the drafters intended for the document to be read in such a manner, however, they should have made that explicit. As it stood, the only reasonable interpretation of the letter was that it proposed a single settlement offer. The district cannot now treat its letter as offering a menu of options, any of which could be accepted by the plaintiff while others are ignored. The letter did not state that pieces of it could be accepted independently. Such a construction would lead to intractable problems in determining which combinations or portions or single sentences of offers could be accepted. The only reasonable construction of the letter was that it was a single omnibus settlement offer, with acceptance of each proposal conditioned on acceptance of the others.

Accordingly, this order finds that the relief obtained by plaintiff was more favorable than the settlement offer made by the district that plaintiff did not accept. Plaintiff's attorney's fees award WILL NOT be reduced pursuant to 20 U.S.C. 1415(i)(3)(D)(i).

## Conclusion

For the foregoing reasons, the hearing officer's conclusion that plaintiff was not a prevailing party is REVERSED. Accordingly, plaintiff is entitled to attorney's fees in an amount to be determined upon its motion for fees. The Court will issue a supplemental order promptly to set forth the procedures for determining the amount of attorney's fees.

IT IS SO ORDERED.

[1]According to Civil Local Rule 16-5, the district was required to "serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint." The complaint was served on July 17, 2002, and the district served its answer on August 6, 2002. The district did not file a certified copy of the transcript of the administrative record, however, until December 11, 2002. At that time, the district filed the administrative record with the Court in violation of this Court's order of August 13, 2002, which ordered that all documents that contain personally identifiable information be filed under seal. On December 12, 2002, the district lodged with the Court another copy of the administrative record -- this time submitting under seal. The December 11, 2002, record will be removed in the case file and the record under seal will be filed.

[2]The deference owed to this determination is related to whether it evinces the hearing officer's careful consideration of all the evidence and demonstrates her sensitivity to the complexity of the issues presented. *Ojai,* 4 F.3d at 1476. The hearing officer's decision here does not demonstrate that a careful analysis of the issue of prevailing party status was undertaken. Thus little deference is due.

[3]This is a much broader standard than under federal law. *Compare BuckhannonBd. & Care Home v. W. Va. Dep't. of Health and Human Res.,* 532 U.S. 598 (2001); *Barrios v. Cal. Interscholastic Fed'n.,* 277 F.3d 1128 (9th Cir. 2002).

[4]A "settlement agreement" denotes a "determination by agreement" or a "meeting of the minds of parties to transactions or controversy; an adjustment of difference or accounts; a coming to an agreement." BLACK'S LAW DICT., at 1372 (6th ed. 1990).

[5]The Ninth Circuit in *Barrios* held that it's conclusion was "unaffected" by *Buckhannon* because Barrios' settlement agreement afforded him a legally enforceable instrument, which under *Fisher,* makes him a "prevailing party." 277 F.3d at 1134 n.5 (rejecting *Buckhannon* dictum because "it runs contrary to this court's holding in *Fisher,* by which we are bound").

[6]"Even though *Barrios* involved the ADA's

fee-shifting provision, its holding almost certainly applies to the IDEA's fee shifting provision as well. *Bennett,* 259 F.3d 1097 (Supreme Court has interpreted Congress's various fee-shifting provisions consistently); *J.C.,* 278 F.3d at 123-24 (same)," *Ostby v. Oxnard Union High,* 209 F. Supp. 2d 1035. (2002).

[7] The hearing officer referred to her written decision as just that, a "decision." (AR at 126) ("Okay, and if the parties are willing to submit it, then I'm willing to do a decision based on what I've heard here today.") The district disputes this characterization of the "decision" and asserts that a "stipulated decision" was rendered. It maintains that because of its stipulations to plaintiff's issues, the hearing did not yield a judgment on the merits, a consent decree or a settlement agreement as *Buckhannon* requires. As noted above, however, the Ninth Circuit does not so require.

[8] The hearing officer's stay-put order ordered the district to maintain plaintiff in a conductive education program pending resolution of the dispute. Following this, plaintiff's counsel demanded that the district fund plaintiff's placement at Beginning Steps (rather than at some other public education program) through the duration of the legal dispute. The district's counsel responded, noting that the stay-put order did not require the district to convene an IEP and merely required placement of plaintiff "in a program that is analogous to the Beginning Steps program." The district, however, offered to "maintain Omid's placement at Beginning Steps to Independence." Thus the district was not bound by any legal obligation to fund plaintiff's placement at Beginning Steps or conduct an IEP. Pursuant to the hearing officer's decision, however, an IEP had to be held to determine plaintiff's prospective placement.

[9] Because the hearing officer did not have the authority to order a specific prospective placement, plaintiff withdrew issue number 4 regarding prospective placement. The hearing officer's decision required the district to convene an IEP for the purpose of determining plaintiff's prospective status. When plaintiff was not satisfied with the proposed offer of a public institution by the district at that IEP meeting in September 2002, he was able to pursue additional remedies and plaintiff was able to remain at Beginning Steps.